No. 99,409

In the Matter of JEFFREY T. PITTMAN, *Respondent.*
(179 P.3d 404)

Opinion filed March 28, 2008.

*Alexander M. Walczak*, deputy disciplinary administrator, argued the cause and *Stanton A. Hazlett*, disciplinary administrator, was with him on the formal complaint for petitioner.

No appearance by respondent.

*Per Curiam*: This is an original uncontested proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Jeffrey T. Pittman, of Galena, Kansas, an attorney admitted to the practice of law in the state of Kansas in 2001. Respondent's license to practice law in Kansas was suspended on October 11, 2006, for failure to pay the annual attorney registration fee, fulfill the required hours of continuing legal education, pay the noncompliance fee for the compliance period, and pay the annual CLE fee. The suspension remains in effect.

A hearing was held before a panel of the Kansas Board for Discipline of Attorneys on June 28, 2007. The respondent did not appear.

After hearing the evidence presented at the hearing, the hearing panel concluded that the respondent violated KRPC 1.1 (2007 Kan. Ct. R. Annot. 384) (competence); KRPC 1.3 (2007 Kan. Ct. R. Annot. 398) (diligence); KRPC 1.4 (2007 Kan. Ct. R. Annot. 413) (communication); KRPC 1.15(b) (2007 Kan. Ct. R. Annot. 473) (safekeeping property); KRPC 1.16(d) (2007 Kan. Ct. R. Annot. 487) (declining or terminating representation); KRPC 3.2 (2007 Kan. Ct. R. Annot. 503) (expediting litigation); KRPC 8.1(b) (2007 Kan. Ct. R. Annot. 553) (disciplinary matters); KRPC 8.4(b) (2007 Kan. Ct. R. Annot. 559) (committing a criminal act); Supreme Court Rule 207(b) (2007 Kan. Ct. R. Annot. 288) (duty to cooperate); and Supreme Court Rule 211(b) (2007 Kan. Ct. R. Annot. 304) (requiring service of answer to complaint).

The panel unanimously recommends that the respondent be disbarred. The respondent did not file exceptions to the final hearing report.

The panel's findings of fact, conclusions of law, and recommendations for discipline are reproduced in part as follows:

### "FINDINGS OF FACT

#### "Representation of E. W.

"2.  On February 5, 2005, [Ms. E. W.] retained the Respondent to file a post-divorce motion to change custody. During [Ms. W.]'s marriage to [Mr. W.], two children were born: [J. R. W.] and [K. M. W.] Following the divorce, the Court awarded [Mr. W.] with primary residential custody of their children. [Ms. W.] was interested in seeking and obtaining primary residential custody. [Ms. W.] paid the Respondent an [advance] fee of $750.00.

"3.  [Ms. W.] believed that there was a significant change in circumstances that would warrant a change in custody. The change in circumstances included: [Mr. W.] was unable to maintain stable employment, [Mr. W.] continually moved, and their son missed a large number of days of school and was considered truant. On the other hand, [Ms. W.] was in a stable personal relationship with her boyfriend of six years, she maintained the same job for a period of three years, and she had purchased her own home. [Ms. W.] provided the Respondent with a number of personal papers and documents which supported her request for a change of custody.

"4.  On April 1, 2005, the Respondent filed a motion to modify child custody, in behalf of [Ms. W.] However, the Respondent did not include the information contained in ¶ 3 above in the motion. Despite the fact that he filed the motion with the Court, the Respondent failed to take action to have the motion heard by the Court.

"5.  In the meantime, [Mr. W.] persuaded the authorities to pursue a child in need of care case, alleging wrongdoing by [Ms. W.] Through the child in need of care case, [Mr. W.] sought to have [Ms. W.]'s visitation limited to supervised visitation. The Court scheduled a hearing on the child in need of care petition for July 5, 2005.

"6.  Beginning in April, 2005, and continuing throughout the period of representation, [Ms. W.] was unable to contact the Respondent. She called the Respondent numerous times. The Respondent failed to return [Ms. W.'s] telephone calls. [Ms. W.] went to the Respondent's office on several occasions, hoping to make contact with the Respondent and find out about the status of the motion to change custody. However, [Ms. W.] was never able to locate the Respondent at his office. When [Ms. W.] went to the Respondent's office, she taped notes to the Respondent's door, asking him to make contact with her and provide her with a status update. The Respondent failed to call [Ms. W.] in response to the notices she left on his door.

"7.    While [Ms. W.]'s motion to modify custody did not proceed, the child in need of care case did. On July 5, 2005, the Court held a hearing on the petition in the child in need of care case. During the hearing, the judge determined that there were common issues involved in the divorce proceeding. The Court contacted the Respondent by telephone and instructed him to appear in Court. When the Respondent arrived, he was agitated and he advised [Ms. W.] [to] agree to supervised visitation.

"8.    Sometime following the hearing in July, 2005, [Mr. W.] moved with the children. [Mr. W.] failed to inform [Ms. W.] of their location.

"9.    Because the Respondent took no action to get [Ms. W.]'s motion heard and because the Respondent would not contact [Ms. W.] regarding her case, [Ms. W.] sought new counsel. However, because [Ms. W.] is of limited means, she could not immediately retain new counsel. After obtaining $1,000.00 from her mother, [Ms. W.] retained Samuel Marsh. Mr. Marsh was able to locate [Mr. W.] in Toledo, Ohio.

"10.    Mr. Marsh attempted to proceed on the motion to modify child custody. However, because the children had been living in Ohio for some time, the Court in Kansas denied the relief sought based on a lack of jurisdiction.

"11.    Despite repeated requests to do so, the Respondent failed to return the personal papers and documents to [Ms. W.]

### "Criminal Conduct

"12.    On April 30, 2007, the Respondent was charged with domestic assault in the second degree, a class C felony, for choking Callie Parazine, in the Jasper County, Missouri, Circuit Court. The Court issued a warrant for the Respondent's arrest. Thereafter, on May 7, 2007, the sheriff's department arrested the Respondent. After the Respondent posted bond, the sheriff's department released the Respondent.

"13.    On May 30, 2007, the Respondent appeared in court for arraignment and a public defender was appointed to represent the Respondent. The Court ordered the Respondent to appear in Court on June 13, 2007.

"14.    On June 13, 2007, the Court reset the case to June 27, 2007. While the outcome of the June 27, 2007, hearing on the felony assault was unknown at the time of the hearing on the Formal Complaint, it appears that the charge remains pending against the Respondent.

"15.    In 2006, the Respondent was charged with drug offenses in the District Court of Ottawa County, Oklahoma. Thereafter on June 4, 2007, the Respondent entered a plea of *nolo contendere* to misdemeanor drug offenses related to his possession of materials used to make methamphetamine. At that time, the Court ordered that the Respondent spend one year in jail. However, the Court suspended all but 30 days of the jail term. The Court further ordered the Respondent to report to jail to serve the 30 days on June 12, 2007.

"16.    On June 12, 2007, the Respondent failed to report to the jail as ordered. Consequently, the Court issued a warrant for the Respondent's arrest. To date, the Respondent has not been apprehended.

## "CONCLUSIONS OF LAW

"1.    Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.15(b), KRPC 1.16(d), KRPC 3.2, KRPC 8.1(b), KRPC 8.4(b), Kan. Sup. Ct. R. 207(b), and Kan. Sup. Ct. R. 211(b), as detailed below.

"2.    Kan. Sup. Ct. R. 215 governs service of process in disciplinary proceedings. That rule provides, in pertinent part as follows:

'(a)    Service upon the respondent of the formal complaint in any disciplinary proceeding shall be made by the Disciplinary Administrator, either by personal service or by certified mail to the address shown on the attorney's most recent registration, or at his or her last known office address.
. . . .

'(c)    Service by mailing under subsection (a) or (b) shall be deemed complete upon mailing whether or not the same is actually received.'

In this case, the Disciplinary Administrator complied with Kan. Sup. Ct. R. 215(a) by sending a copy of the Formal Complaint and the Notice of Hearing, *via* certified United States mail, postage prepaid, to the address shown on the Respondent's most recent registration. On May 10, 2007, the package containing the Formal Complaint and Notice of Hearing sent to the Respondent by certified mail was returned to the Disciplinary Administrator's office . . . as 'unclaimed.' The Hearing Panel concludes that the Respondent was afforded the notice that the Kansas Supreme Court Rules require.[1]

"3.    Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The Respondent failed to competently represent [Ms. W.] when he failed to exercise appropriate thoroughness in prosecuting the motion to change custody. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.1.

"4.    Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. In this case, the Respondent failed to provide diligent representation to [Ms. W.] when he failed to diligently prosecute her post-divorce motion to change child custody. Because the Respondent failed to act with reasonable diligence and promptness in representing [Ms. W.], the Hearing Panel concludes that the Respondent violated KRPC 1.3.

---

[1] "In addition to affording the Respondent the notice that the rules require, the Disciplinary Administrator's office also attempted to provide the Respondent with actual notice. The Disciplinary Administrator's office sent a copy of the Formal Complaint and Notice of Hearing to the Respondent's residential address in Joplin, Missouri. The copy of the Formal Complaint and Notice of Hearing that was sent to the Respondent's residential address was also returned, it was marked 'undeliverable as addressed.' "

"5.  KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the Respondent violated KRPC 1.4(a) when he failed to return [Ms. W.]'s telephone calls and when he failed to contact her after receiving notes on his door. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

"6.  Lawyers must keep the property of their clients safe. *See* KRPC 1.15.

'(b)  Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.'

In this case, the Respondent received personal papers and other documents from [Ms. W.] in support of her motion to change child custody. [Ms. W.] repeatedly requested that the Respondent return the papers and documents. To date, the Respondent has failed to do so. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.15(b) by failing to 'promptly deliver to [Ms. W.] other property that [Ms. W.] is entitled to receive.'

"7.  KRPC 1.16(d) provides:

'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

By failing to surrender [Ms. W.]'s personal papers and other documents and by failing to refund any unearned advanced fee, the Hearing Panel concludes that, accordingly, the Respondent violated KRPC 1.16(d).

"8.  An attorney violates KRPC 3.2 if he fails to make reasonable efforts to expedite litigation consistent with the interests of his client. In this case, the Respondent failed to expedite [Ms. W.]'s post-divorce motion for a change of child custody. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 3.2.

"9.  'It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.' KRPC 8.4(b). In this case, the Respondent was convicted of misdemeanor drug offenses for being in possession of items used to make methamphetamine.[2] Accordingly, the Hearing Panel concludes that the Respon-

---

[2] Additionally, the Respondent failed to appear at the jail to serve his sentence as ordered by the Court. Further, in [Missouri], the Respondent is facing a felony crime against a person."

dent committed criminal acts and those criminal acts reflect directly on the Respondent's fitness as a lawyer, in violation of KRPC 8.4(b).

"10.   Lawyers must cooperate in disciplinary investigations. KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b) provide the requirements in this regard. '[A] lawyer in connection with a . . . disciplinary matter, shall not: . . . knowingly fail to respond to a lawful demand for information from [a] disciplinary authority, . . .' KRPC 8.1(b).

> 'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.' Kan. Sup. Ct. R. 207(b)

The Respondent knew that he was required to forward a written response to the initial complaint—he had been instructed to do so in writing by the Disciplinary Administrator and by the attorney investigator. Because the Respondent knowingly failed to provide a written response to the initial complaint filed by [Ms. W.] as requested by the Disciplinary Administrator and the attorney investigator, the Hearing Panel concludes that the Respondent violated KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b).

"11.   The Kansas Supreme Court Rules also require attorneys to file Answers to the Formal Complaints. Kan. Sup. Ct. R. 211(b) provides the requirement:

> 'The Respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.' Kan. Sup. Ct. R. 211(b)

In this case, the Respondent violated Kan. Sup. Ct. R. 211(b) by failing to file a written Answer to the Formal Complaint. Accordingly, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 211(b).

## "AMERICAN BAR ASSOCIATION

## STANDARDS FOR IMPOSING LAWYER SANCTIONS

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to his client to provide competent and diligent representation. Additionally, the Respondent violated his duty to his client to provide adequate communication. Finally, the Respondent violated his duty to the public and to the legal profession to maintain his personal integrity.

"*Mental State.* The Respondent intentionally violated his duties.

*"Injury.* As a result of the Respondent's misconduct, the Respondent caused actual serious injury to his client. Further, the Respondent caused actual serious injury to the legal profession.

*"Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Multiple Offenses. The Respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.15(b), KRPC 1.16(d), KRPC 3.2, KRPC 8.1(b), KRPC 8.4(b), Kan. Sup. Ct. R. 207(b), and Kan. Sup. Ct. R. 211(b). As such, the Respondent committed multiple offenses.

"Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process. The Respondent knew that he was required to provide a written response to the complaint filed by [Ms. W.] and the Respondent never filed such a response. Further, the Kansas Supreme Court rules require that the Respondent file an Answer to the Formal Complaint. Because the Respondent failed to provide a response to the initial complaint and because the Respondent failed to provide an Answer to the Formal Complaint, the Hearing Panel concludes that the Respondent obstructed the disciplinary proceeding.

"Vulnerability of Victim. Because of her limited means, [Ms. W.] was particularly vulnerable to the Respondent's misconduct.

"Indifference to Making Restitution. To date, the Respondent has made no effort to make restitution to [Ms. W.] for failing to fulfill the representation.[3]

"Illegal Conduct, Including that Involving the Use of Controlled Substances. In this case, the Respondent was convicted of having committed criminal offenses. Clearly, the Respondent engaged in illegal conduct.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found no mitigating circumstances.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client.' Standard 4.11.

'Disbarment is generally appropriate when:

---

[3] "Although the Respondent has not returned the unearned fees, [Ms. W.] filed a claim with the Client Protection Fund. Earlier, the Client Protection Fund issued [Ms. W.] a payment in the amount of $750.00."

'(a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or

'(b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

'(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.' Standard 4.41.

'Disbarment is generally appropriate when a lawyer's course of conduct demonstrates that the lawyer does not understand the most fundamental legal doctrines or procedures, and the lawyer's conduct causes injury or potential injury to a client.' Standard 4.51.

'Disbarment is generally appropriate when:

'(a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or

'(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.' Standard 5.11.

'Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system.' Standard 7.1."

## "RECOMMENDATION

"The Deputy Disciplinary Administrator recommended that the Respondent be disbarred. Additionally, the Deputy Disciplinary Administrator recommended that the Respondent be ordered to pay the Client Protection Fund $750.00 and that the Respondent return the personal papers to [Ms. W.]

"While it is important to note that the Respondent has not previously been disciplined for attorney misconduct, the facts of this case warrant the most severe sanction available. [Ms. W.] has suffered and will continue to suffer serious injury as a result of the Respondent's misconduct. The Respondent failed to participate in the disciplinary process. Finally, the Respondent has brought disrepute to the legal profession through his criminal conduct. As such, the Hearing Panel unanimously recommends that the Respondent be disbarred from the practice of law in the state of Kansas."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence. *In re Landrith*, 280 Kan. 619, 636, 124 P.3d 467 (2005); Supreme Court Rule 211(f) (2007 Kan. Ct. R. Annot. 304) (misconduct to be established by clear and convincing evidence).

The respondent did not file any exceptions to the panel's final report and, thus, the findings of fact in the panel's report are deemed to be admitted. Supreme Court Rule 212(d) (2007 Kan. Ct. R. Annot. 317).

We conclude the panel's findings of fact are supported by clear and convincing evidence and support the panel's conclusions of law, and we adopt the same. Further, we note respondent did not appear at the hearing before us, contrary to Supreme Court Rule 212(d).

With respect to the discipline to be imposed, the panel's recommendation that the respondent be disbarred from the practice of law in the state of Kansas is advisory only, and shall not prevent the court from imposing discipline greater or lesser than that recommended by the panel or the Disciplinary Administrator. Rule 212(f) (2007 Kan. Ct. R. Annot. 317).

After careful consideration, the majority of the court concludes that the appropriate discipline is disbarment. A minority would impose a lesser discipline.

IT IS THEREFORE ORDERED that the respondent, Jeffrey T. Pittman, be and he is hereby disbarred from the practice of law in the state of Kansas in accordance with Supreme Court Rule 203(a)(1) (2007 Kan. Ct. R. Annot. 261) for his violations of the Kansas Rules of Professional Conduct.

IT IS FURTHER ORDERED that the Clerk of the Appellate Courts strike the name of Jeffrey T. Pittman from the roll of attorneys licensed to practice law in Kansas.

It Is Further Ordered that Jeffrey T. Pittman comply with Supreme Court Rule 218 (2007 Kan. Ct. R. Annot. 337).

It Is Further Ordered that this order be published in the official Kansas Reports and that the costs of this action be assessed to respondent.